UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LAYFIELD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 2:23-cv-02540-CSK<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 15, 20) |

Plaintiff Joseph Layfield seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for a period of disability and disability insurance benefits.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks either a reversal of the ALJ's decision and an award of benefits, or alternatively, a remand for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-motion is GRANTED, and the final decision of the Commissioner is AFFIRMED.

---

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and proceeds on the consent of all parties. (ECF Nos. 7, 8, 9.)

1

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. § 404.900(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. § 404.929. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review of the

Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

II.     **FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

On December 29, 2020, Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging he has been disabled since March 16, 2020. Administrative Transcript ("AT") 91-92, 203 (available at ECF No. 10); *see* AT 16. This is Plaintiff's second application for disability benefits; the first was filed in July 2017 and was closed two months later. AT 113. Plaintiff claimed disability due to severe anxiety, panic attacks, nervousness, feeling overwhelmed, and schizophrenia. AT 231. Plaintiff was diagnosed with schizophrenia at age seventeen and

reported being stable on medication for the past twenty-five years. AT 67, 231, 399, 405. Although he alleged that he stopped working on March 16, 2020 due to his conditions, he testified that he was laid off because of the COVID-19 pandemic. *Id*. Plaintiff's application was denied initially and upon reconsideration; he sought review before an ALJ. AT 91-109, 111-32, 152. Plaintiff appeared with a representative at a July 19, 2022 telephonic hearing before an ALJ, where Plaintiff testified about his impairments and a vocational expert testified about hypothetical available jobs in the national economy. AT 61-90.

On October 4, 2022, the ALJ issued a decision finding Plaintiff was not disabled. AT 16-30. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 16, 2020. AT 19. At step two, the ALJ determined Plaintiff had the following severe impairments:  social anxiety disorder and schizophrenia. *Id.* At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. AT 20 (citing 20 C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listing 1.16 (lumbar spinal stenosis) for Plaintiff's physical impairments, and Listings 12.03 (schizophrenia spectrum and other psychotic disorders) and 12.06 (anxiety) for Plaintiff's mental impairments, examining the "Paragraph B" criteria for the mental impairments.[2] The ALJ found Plaintiff moderately limited in interacting with others and in concentrating, persisting, or maintaining pace; she also found Plaintiff mildly limited in understanding, remembering, or applying information and in adapting or managing oneself. AT 20-21. In making these findings, the ALJ noted

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b. "Paragraph C" of listings including 12.03 and 12.06, provides criteria used to evaluate "serious and persistent mental disorders." To be "serious and persistent" there must be a medically documented history of the existence of the mental disorder over a period of at least 2 years. *Id.*, sub. A.2.c.

conflicts in the record between Plaintiff's testimony, the medical evidence, and the medical opinions in the record. *See id.* The ALJ also examined the "Paragraph C" criteria and found no evidence of this. AT 22.

The ALJ then found Plaintiff had the residual functional capacity to perform "a full range of work at all exertional levels but with non-exertional limitations. The claimant can perform simple and routine tasks that are equivalent to unskilled work, there should be no regular interaction with the general public. The claimant can occasionally interact with co-workers and supervisors." AT 22.

Based on the residual functional capacity, the ALJ determined at step four that Plaintiff was incapable of performing past relevant work. AT 28. However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including: (i) recycler; (ii) order selector; and (iii) janitor. AT 429. Thus, the ALJ found Plaintiff not disabled during the relevant period. AT 30.

On August 31, 2023, the Appeals Council rejected Plaintiff's appeal. AT 1-7. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 15, 20.)

**III.   ISSUES PRESENTED FOR REVIEW**

Plaintiff contends the ALJ erred in her evaluation of the opinions of the treating therapists, Lori Espinosa, MS, APPC, and Jessica Holum, PAC; and that the ALJ's residual functional capacity findings failed to encompass all of Plaintiff's limitations established in the record. Pl. MSJ at 11 (ECF No. 15). Plaintiff seeks reversal of the ALJ's decision and an award of benefits, or alternatively a remand for further proceedings. (ECF Nos. 15, 24.)

The Commissioner argues that substantial evidence supports the ALJ's assessment of the medical opinion evidence and the residual functional capacity. Def. MSJ at 2, 14 (ECF No. 20). Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should be affirmed. *Id.*

/ / /

## IV. DISCUSSION

Before addressing Plaintiff's two issues presented for review, the Court first addresses Defendant's waiver argument.

### A. Waiver

Defendant argues that Plaintiff waived two issues. Def. MSJ at 5, 6, 8, 8 n.5, 11. Failure to raise an issue before the district court results in waiver or forfeiture. *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). First, Defendant argues that Plaintiff failed to discuss or challenge the ALJ's findings as to Plaintiff's symptoms, which is a concession that the findings were proper and supported by substantial evidence. Def. MSJ at 5, 8 & n.5, 11. Second, Defendant argues that Plaintiff waived the argument that the ALJ improperly discounted Espinosa's May 6, 2021 letter because it relied heavily on Plaintiff's symptoms. Def. MSJ at 6.

As to the first waiver argument regarding the ALJ's findings of Plaintiff's symptoms, Plaintiff did not raise this argument in his opening brief. *See* Pl. MSJ. In his reply, Plaintiff does not challenge this waiver argument, conceding the issue. *See* Pl. Reply. This is in marked contrast to the second waiver issue, which Plaintiff does challenge in his reply. Therefore, the Court concludes that Plaintiff has waived a challenge to the ALJ's findings as to Plaintiff's symptoms.

As to the second waiver argument regarding Espinosa's May 6, 2021 letter, Plaintiff asserts in his reply that this argument was not waived and cited to specific portions of his opening brief where the argument was raised. *See* Pl. Reply at 4, 5. This is one of Plaintiff's main arguments on appeal, and it's unclear why the government argues waiver. The Court agrees with Plaintiff, and concludes that he did not waive an argument challenging the ALJ's discounting of Espinosa's May 6, 2021 letter.

### B. Medical Opinion Evidence

Plaintiff argues that the ALJ erred when evaluating the opinions of Lori Espinosa, M.A., clinical therapist; and Jessica Holum, PAC.

///

1. Legal Standards

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, the ALJ is to evaluate medical opinions and prior administrative medical findings by considering their "persuasiveness." *Id.*

In determining how "persuasive" the opinions of medical sources and prior administrative medical findings are, an ALJ must consider the following factors: "supportability, consistency, treatment relationship, specialization, and 'other factors.'" 20 C.F.R. §§ 404.1520c and 416.920c at sub. (b) and (c)(1)-(5). Despite a requirement to "consider" all factors, the ALJ only need articulate a rationale on how the supportability and consistency factors were considered, as they are "the most important factors." *Id.* at sub. (b)(2). A medical opinion is supported if the medical source explains the relevant objective medical evidence. *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). A medical opinion's consistency concerns its alignment with other medical and nonmedical sources in the record. *Id.* at 792. The regulations grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence in the record. 20 C.F.R. §§ 404.1520c(c)(1)-(2). The ALJ is not required to articulate findings on the remaining factors (relationship with plaintiff, specialization, and "other") unless "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." *Id.* at sub. (b)(2)-(3). An ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.920c(b)(1) ("source-level articulation"). Generally speaking, the ALJ does not need to discuss every piece of evidence when interpreting the evidence and developing the record. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

///

2. <u>Analysis</u>

As an initial matter, Defendant states that Plaintiff incorrectly applies the pre-2017 standard. Def. MSJ at 3; Pl. MSJ at 11. Throughout Plaintiff's opening brief, it appears that he properly applies the post- March 2017 standard, but referenced the old, pre-March 2017 standard on one occasion. *See* Pl. MSJ at 11. As required, the Court applies the new standards for applications filed on or after March 27, 2017.

a. <u>ALJ's Finding on Plaintiff's Subjective Testimony</u>

When the objective medical evidence in the record is inconsistent with the Plaintiff's subjective testimony, the ALJ may weigh it as undercutting the testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 498-99 (9th Cir. 2022). Here, the ALJ found Plaintiff's subjective symptom testimony inconsistent with the objective evidence. AT 23. Because Plaintiff does not challenge these ALJ findings as discussed above, she essentially concedes that the findings were proper. *See Karenlee H. v. Saul*, 2022 WL 959269, at *5, 7 (S.D. Cal. Mar. 30 2022) (finding Plaintiff concedes point by not addressing it); *Edimer P. v. Kijakazi*, 2022 WL 827128, at *2 (S.D. Cal. Mar. 18, 2022); *see also Greger*, 464 F.3d at 973. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AT 23. The ALJ further found that Plaintiff's testimony concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. *Id*.

When analyzing the medical evidence of record, the ALJ also found that multiple mental status examinations of Plaintiff showed euthymic mood and cooperativeness, and that Plaintiff is attentive, oriented, alert, exhibits normal speech, coherent thought process, unremarkable behavior, and partial insight and at least fair judgment. AT 23, 358, 362, 366, 402, 404, 479. Plaintiff had intact concentration, normal memory, and is oriented on all spheres. AT 23, 404. Plaintiff reported to Holum in January 2021 no illusions or hallucinations (AT 404), and was noted to be stable and compliant with medications throughout early 2021 (AT 405). He also reported panic attacks, but only

when he is around large crowds of people and anxiety that is only generalized. AT 23, 355.

In March 2021, Plaintiff reported to Holum feeling "really edgy" and wanting to isolate, but also reported not taking his medication on time. AT 23, 365. Plaintiff also reported stability with his medication compliance and stated he was doing generally well. AT 23, 369. A March 2021 mental status examination was generally within normal limits. AT 370. Other mental status examinations showed Plaintiff as cooperative, exhibiting normal psychomotor activity, euthymic mood, appropriate affect, and clear speech. AT 24, 389, 392. Telehealth exams in late 2021 were generally unremarkable. AT 24, 472, 476. In January 2022, Plaintiff reported that his anxiety is manageable with medication and reports stable mood with medication. AT 24, 466. Continuing throughout 2022, Plaintiff had multiple mental status examinations within normal limits. AT 24, 444, 448-49, 452-53, 464, 468.

b.     Medical Evidence From Lori Espinosa

First, the ALJ addressed a statement and letter dated January 26, 2021 completed by Espinosa. AT 26, 249-52. In this statement and letter, Espinosa noted that she had treated Plaintiff for two months on a weekly schedule; Plaintiff met the criteria for schizophrenia and social anxiety disorder, which significantly impacted his ability to work; and opined that without accommodations, Plaintiff would have difficulty obtaining and maintaining employment. AT 250-51. She also noted that Plaintiff becomes overwhelmed emotionally when interacting with others socially, which manifests in severe anxiety that can escalate to panic attacks. AT 251. While the ALJ noted that the letter indicated Plaintiff met the criteria for schizophrenia and social anxiety, the ALJ found that the letter does not provide a functional assessment related to Plaintiff's impairments, and therefore did not assess the persuasiveness of this letter. AT 26.

Under 20 C.F.R. § 404.1513(a)(2), a medical opinion is "a statement from a medical source about what [Plaintiff] can still do despite [Plaintiff's] impairment(s) and whether [Plaintiff] ha[s] one or more impairment-related limitations or restrictions" in the

ability to perform physical, mental, and other demands of work activities, and the ability to adapt to environmental conditions. Here, the January 26, 2021 letter does not address Plaintiff's ability to perform physical, mental, or other demands of work activities. The letter opines that Plaintiff's diagnosis of social anxiety disorder "significantly impacts his ability to work and maintain employment." AT 251. As the ALJ correctly noted, a statement about Plaintiff's ability to work is an issue reserved to the Commissioner. AT 26; 20 C.F.R. § 404.1520b(c)(3)(i).[3] Accordingly, this letter is not a medical opinion and the ALJ did not err by not assessing its persuasiveness.

     Second, the ALJ addressed Espinosa's May 6, 2021 medical opinion. AT 26. In this opinion, Espinosa found that Plaintiff had moderately limited restriction of activities of daily living, markedly limited difficulties in maintaining social functioning and repeated episodes of decompensation each of an extended duration, and extreme limited difficulties in maintaining concentration, persistence, or pace. AT 384. The ALJ found this opinion to be less than persuasive.

     The ALJ found that Espinosa only had a brief treating relationship with Plaintiff of two months. AT 26. Also, the ALJ found that the opinion relied heavily on Plaintiff's subjective reports of his symptoms, which are inconsistent with the totality of the record and the objective findings which showed normal mental status examinations. AT 26. The ALJ found that the marked and extreme limitations found by Espinosa were unsupported by the record. An ALJ may properly reject a treating physician's opinion if it is largely based on Plaintiff's subjective reports that have been properly discounted. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Therefore, the ALJ properly found that the May 6, 2021 opinion, which relied on Plaintiff's subjective symptom reports, was inconsistent with the totality of the record, and that the marked and/or extreme limitations

---

[3] Defendant correctly notes that in some places the ALJ cites to regulations which no longer apply under the new regulations. Def. MSJ at 5; *see* AT 26 (citing 20 C.F.R. § 404.1527(d)). The Court agrees that any citation error by the ALJ is harmless because 20 C.F.R. § 404.1527(d) and 20 C.F.R. § 404.1520b)(c)(3) both confirm that Plaintiff's ability to work is an issue reserved to the Commissioner.

found by Espinosa were unsupported by the record. *See Woods*, 32 F.4th at 792.

Third, the ALJ addressed letters from Espinosa written in September 2021 and April 25, 2022. AT 26-27; *see* AT 399-401, 432-36. In these letters, Espinosa noted that Plaintiff met the criteria for schizophrenia, agoraphobia, and panic disorder. AT 26, 399, 432. She stated that without daily support, Plaintiff would have difficulty managing tasks of daily living, and that his mental impairments significantly impacted his ability to work and maintain employment. AT 26-27, 399-400, 433-34. Espinosa noted that Plaintiff had been let go from multiple positions for failing to meet expectations, and had anxiety when interacting with others. AT 26, 400, 433-34. Espinosa also noted that Plaintiff was laid off due to the COVID-19 pandemic, and had anxiety about returning to work. AT 27, 400.

The ALJ found that Espinosa's opinions lacked persuasion because of their reliance on Plaintiff's subjective complaints that are inconsistent with the objective medical findings and the totality of the record. AT 27. As discussed above, the ALJ outlined the inconsistences between Plaintiff's subjective testimony and the objective evidence. The ALJ found Espinosa's diagnoses supported by the record but found that statements about Plaintiff's ability to work are issues reserved to the Commissioner. Therefore, the ALJ properly analyzed these opinions, and found they lacked persuasion. *See Woods*, 32 F.4th at 792.

Fourth, the ALJ addressed a psychiatric review technique conducted by Espinosa in April 2022. AT 27. In this review, Espinosa indicated that Plaintiff had marked restriction of activities of daily living, moderate difficulty in maintaining social functioning, marked three repeated episodes of decompensation (by way of history), and extreme limitation in maintaining concentration, persistence, or pace. AT 27, 427. Espinosa noted that Plaintiff experiences anxiety in crowds, with unfamiliar people, feels trapped, and experiences panic attacks. AT 27, 429. Espinosa also noted that Plaintiff suffers from disorganized thought process and loosening of associations. AT 429

The ALJ found this April 2022 opinion less than persuasive. The ALJ found that

the support for the review relied on Plaintiff's subjective complaints and failed to take into account Plaintiff's stability and significant symptom reduction when he takes his medication. AT 27. Reliance on subjective complaints is a valid reason to discount Espinosa's opinions. *See Morgan v. Comm'r*, 169 F.3d 595, 559 (9th Cir. 1999). The ALJ also found the opinion inconsistent with the totality of the record, which shows improvement in Plaintiff's condition with medication and generally normal mental status examinations. AT 27. The ALJ properly discounted this April 2022 opinion because it was inconsistent with the record and Espinosa relied on Plaintiff's subjective complaints, which were inconsistent with the objective medical findings and the totality of the record that showed generally normal mental status examinations. *See Woods*, 32 F.4th at 792.

Therefore, the ALJ's decisions on Espinosa's opinions are supported by substantial evidence.

### c. Medical Evidence from Jessica Holum

With respect to Holum, the ALJ first addressed a mental evaluation conducted on January 25, 2021, which the ALJ found to be somewhat persuasive. AT 27. In this evaluation, Holum found Plaintiff to exhibit fair ability to understand, remember, and carry out simple and complex instructions; maintain concentration, attention and persistence; and interact appropriately with supervisors and co-workers. AT 27, 406. Holum also found that Plaintiff had poor ability to complete a normal workday and workweek without psychologically based symptom related interruption, interact with the public, or respond appropriate to changes in a work setting. *Id.* The ALJ found Holum's treatment notes somewhat consistent with her assessment of Plaintiff. AT 27-28. The ALJ properly assessed this opinion, considering supportability and consistency. *See Woods*, 32 F.4th at 792.

Second, the ALJ assessed Holum's May 2022 opinion. AT 28. In this opinion, Holum found Plaintiff had markedly limited restriction of activities of daily living and extremely limited difficulties in maintaining social functioning, maintaining concentration, persistence or pace, and in experiencing repeated episodes of decompensation each of

an extended duration dating back to 1996. AT 27, 438. The ALJ found this May 2022 opinion less than persuasive. AT 27. The ALJ found the opinion lacked support from the form itself, and that it was unsupported by Holum's own treatment notes. AT 27; *see Tommasetti*, 533 F.3d at 1041 (holding an ALJ may discount an expert's medical opinion that is inconsistent with expert's other findings). The ALJ also found the opinion to be inconsistent with the totality of the record and objective findings, which show normal mental status examinations, normal behavior and thought process, and no signs of hallucinations. AT 27. The ALJ found that marked and/or extreme limitations were unsupported by the record. The ALJ properly assessed this opinion, considering supportability and consistency. *See Woods*, 32 F.4th at 792.

Therefore, the ALJ's assessment of Holum's opinions are supported by substantial evidence.

Plaintiff also argues that Espinosa and Holum's opinions were "entirely consistent" with their other opinions and with each other. Pl. MSJ at 8-9. This is incorrect. *Compare* AT 384 (Espinosa opining in May 2021 that Plaintiff had an extreme limitation in concentration, pace, and persistence) *with* AT 406 (Holum opining in January 2021 that Plaintiff had a fair ability in concentrating, attention, and persistence); *compare* AT 384 (Espinosa opinion that Plaintiff had markedly limited repeated episodes of decompensation) *with* AT 438 (Holum opinion that Plaintiff had extremely limited repeated episodes of decompensation); *compare* AT 384 (Espinosa's May 2021 opinion) *with* AT 427 (Espinosa's April 2022 opinion).

Further, Plaintiff argues that a normal mental status is not necessarily inconsistent with an inability to handle work stress, or maintain adequate concentration of pace in a work setting, and that the ALJ erred by interpreting the mental status findings as a lay person. Pl. MSJ at 10. The ALJ is responsible for independently reviewing and forming conclusions about the medical evidence, and resolving ambiguities. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *Tommasetti*, 533 F.3d at 1041. It is reasonable that the ALJ would find normal findings of attentiveness, coherent thought

process, and alertness were contrary to an opinion that Plaintiff was limited in maintaining concentration, persistence, and pace to the extent that he had an "incompatibility with the ability to do any gainful activity." AT 358, 438. Therefore, the ALJ properly assessed the opinion evidence as discussed above and the ALJ's conclusions are supported by substantial evidence.

### C. Residual Functional Capacity Formulation

#### 1. Legal Standards

A claimant's residual functional capacity assessment is a determination of what the claimant can still do despite his or her physical, mental and other limitations. 20 C.F.R. § 404.1545(a). The residual functional capacity is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining a claimant's residual functional capacity, an ALJ must assess all the evidence (including the descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite the impairment(s). 20 C.F.R. § 404.1545(a); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (a residual functional capacity that "fails to take into account a claimant's limitations is defective"). Therefore, an ALJ errs when she provides an incomplete residual functional capacity ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

#### 2. Analysis

Plaintiff argues that the ALJ failed to consider all the limitations stated by State agency medical consultants R. Garland, Ph.D., and Stacy Koutrakos, Psy.D., and erred when creating the residual functional capacity. These limitations are that Plaintiff had a moderate limitation in his ability to maintain attention and concentration for extended periods, maintain regular attendance, perform activities in a schedule and be punctual within customary tolerances; and a moderate limitation in his ability to complete a normal workday and workweek without interruptions, perform at a consistent pace, and respond

appropriately to changes in the work setting. Pl. MSJ at 11-12. Plaintiff then names these limitations as "absenteeism" and "work stress." *Id.* at 12.

When creating the residual functional capacity, the ALJ considered the opinions of State agency consultants Dr. Garland and Dr. Koutrakos.[4] AT 25-26. The ALJ noted Dr. Garland's opinion that Plaintiff had moderate limitations in mental functioning under the "paragraph B" criteria: understanding, remembering, or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. AT 25, 99. Dr. Garland further noted that Plaintiff should be able to meet the following criteria on a sustained basis in a "competitive, remunerative work context": to understand, carry out, and remember simple instructions; to make simple judgments and work-related decisions; to respond appropriately to supervision, coworkers and work situations; and to deal with changes in a routine work setting. AT 25, 105.

The ALJ found Dr Garland and Dr. Koutrakos's opinions "generally persuasive." AT 25. She found the opinions were consistent with the totality of the record but found that updated treatment notes failed to support moderate limitations in understanding, remembering, or applying information and adapting or managing oneself because Plaintiff showed no signs of cognitive deficits during exams and remained generally independent in daily living. AT 25. Though the doctors recommended low contact with the public, the ALJ found that Plaintiff should have no contact with the public. AT 26. The ALJ reasoned that updated records showed that Plaintiff had a moderate limitation in interacting with others, which would result in a more restrictive finding than what the doctors recommended. AT 26. The ALJ found that the doctors' assessment of limited contact with supervisors and co-workers remained supported. AT 26.

Here, the ALJ did consider the limitations outlined by Dr. Garland and Dr. Koutrakos when creating the residual functional capacity. The ALJ considered that Dr.

---

[4] Dr. Koutrakos affirmed Dr. Garland's initial assessment on reconsideration, after Plaintiff alleged increased anxiety. The ALJ analyzes the persuasiveness of both doctors together. AT 25.

Garland found Plaintiff had moderate limitations in certain areas, and noted Dr. Garland's explanations of these limitations. AT 25. Dr. Garland found that Plaintiff could maintain attention/concentration for approximately two-hour blocks, work consistently and at a reasonable pace for approximately two-hour segments between arrival, first break, lunch, second break, and departure; attend work regularly without excessive early departures or absences during the typical forty hour work week; and deal with changes in a routine work setting. AT 25, 105. As Defendant notes, neither doctor found Plaintiff had limitations of "absenteeism" or "the ability to respond appropriately to work stress." *See* AT 25, 91-109, 111-32.

Plaintiff also argues that the residual functional capacity did not account for the moderate limitations because a limitation to "simple, routine" tasks does not account for moderate limitations in the ability to complete a normal workday and the ability to handle stress. Pl. MSJ at 12-13 (citing *Slover v. Kijakazi*, 2023 WL 5488416, at *4 (E.D. Cal. Aug. 24, 2023); *Harrell v. Kijakazi*, 2021 WL 4429416, at 7 (E.D. Cal. Sept. 27, 2021); *Sahyoun v. Saul*, 2020 WL 1492661, at *4 (E.D. Cal. Mar. 27, 2020), and others). Plaintiff's case is distinguishable from the cases upon which Plaintiff relies. Here, the ALJ considered Dr. Garland's moderate limitations, and his further explanations of these limitations where he concluded that Plaintiff could work consistently for two-hour segments with normal breaks and deal with changes in a routine work setting. AT 25, 105; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ properly translated Plaintiff's limitations, including pace, attention, concentration, and adaption into a restriction to "simple tasks"). The ALJ also considered Dr. Garland's opinion that Plaintiff "could work where there was relatively low interpersonal contact," limiting contact with supervisors or co-workers. AT 25, 26, 105. The ALJ further considered the doctors' recommendation of low contact with the public, but the ALJ found that Plaintiff should have <u>no</u> contact with the public, which is a more restrictive limitation than what the doctors recommended. AT 26. When creating the residual functional capacity, the ALJ did account for the moderate limitations where the ALJ considered Dr. Garland's

limitations, included a more restrictive limitation of no interaction with the public, and included the limitation of occasional interaction with co-workers and supervisors.

Therefore, there is substantial evidence to support the residual functional capacity.

## V. CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

## ORDER

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;
2. The Commissioner's cross-motion (ECF No. 20) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of the Court is directed to CLOSE this case.

Dated: March 24, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

5, layf.2540.23